**FILED**
CLERK, U.S. DISTRICT COURT

12/9/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____VM_____ DEPUTY

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JAMES C. HUGHES (Cal. Bar No. 263878)
CATHERINE S. AHN (Cal. Bar No. 248286)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2579/2424
     Facsimile: (213) 894-6269
     E-mail:    james.hughes2@usdoj.gov
                catherine.s.ahn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:21-CR-00564-DMG |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT BARRY TRACHTENBERG |
| v. | |
| BARRY TRACHTENBERG and JEFFREY GOODMAN, | |
| Defendants. | |

1.   This constitutes the plea agreement between BARRY
TRACHTENBERG ("defendant") and the United States Attorney's Office
for the Central District of California (the "USAO") in the
investigation of a conspiracy to commit wire fraud executed by
defendant and others from in or about December 2016 through in or
about December 2019, in which the co-conspirators submitted false
claims for payment to the former employer of defendant's co-
conspirator.  This agreement is limited to the USAO and cannot bind

1   any other federal, state, local, or foreign prosecuting, enforcement,

2   administrative, or regulatory authorities.

3                          DEFENDANT'S OBLIGATIONS

4       2.   Defendant agrees to:

5            a.   Give up the right to indictment by a grand jury and, at

6   the earliest opportunity requested by the USAO and provided by the

7   Court, appear and plead guilty to a single-count information in the

8   form attached to this agreement as Exhibit A or a substantially similar

9   form, which charges defendant with conspiracy to commit wire fraud in

10  violation of 18 U.S.C. § 1349.

11           b.   Not contest facts agreed to in this agreement.

12           c.   Abide by all agreements regarding sentencing contained

13  in this agreement.

14           d.   Appear for all court appearances, surrender as ordered

15  for service of sentence, obey all conditions of any bond, and obey

16  any other ongoing court order in this matter.

17           e.   Agree that Defendant's initial appearance,

18  arraignment, and change of plea hearing may proceed by video-

19  teleconference ("VTC") or telephone, if VTC is not reasonably

20  available, so long as such appearances are authorized by Order of the

21  Chief Judge No. 20-097 or another order, rule, or statute.  Defendant

22  understands that, under the Constitution, the United States Code, the

23  Federal Rules of Criminal Procedure (including Rules 11, 32, and 43),

24  he may have the right to be physically present at these hearings.

25  Defendant understands that right and, after consulting with counsel,

26  voluntarily agrees to waive it and to proceed remotely.  Defense

27  counsel also joins in this consent, agreement, and waiver.

28

Specifically, this agreement includes, but is not limited to, the following:

        i.  Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

        ii.  Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

        iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his/her change of plea hearing by VTC or telephone, if VTC is not reasonably available.

        iv.  Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pre-trial release by VTC or telephone, if VTC is not reasonably available.

        f.  Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        g.  Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        h.  Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

        i.  At or before the time of sentencing, satisfy any and all restitution/fine obligations based on ability to pay by

1  delivering a certified check or money order to the Fiscal Clerk of

2  the Court, to be held until the date of sentencing and, thereafter,

3  applied to satisfy defendant's restitution/fine balance.  Payments

4  may be made to the Clerk, United States District Court, Fiscal

5  Department, 255 East Temple Street, 11th Floor, Los Angeles,

6  California 90012.

7  j.  Ability to pay shall be assessed based on the

8  Financial Disclosure Statement, referenced below, and all other

9  relevant information relating to ability to pay.

10  k.  Defendant agrees that any and all restitution/fine

11  obligations ordered by the Court will be due in full and immediately.

12  The government is not precluded from pursuing, in excess of any

13  payment schedule set by the Court, any and all available remedies by

14  which to satisfy defendant's payment of the full financial

15  obligation, including referral to the Treasury Offset Program.

16  l.  Complete the Financial Disclosure Statement on a form

17  provided by the USAO and, within 30 days of defendant's entry of a

18  guilty plea, deliver the signed and dated statement, along with all

19  of the documents requested therein, to the USAO by either email at

20  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

21  Litigation Section at 300 N. Los Angeles St., Suite 7516, Los

22  Angeles, CA 90012.

23  m.  Authorize the USAO to obtain a credit report upon

24  returning a signed copy of this plea agreement.

25  n.  Consent to the USAO inspecting and copying all of

26  defendant's financial documents and financial information held by the

27  United States Probation and Pretrial Services Office.

28

4

1

THE USAO'S OBLIGATIONS

2       3.   The USAO agrees to:

3            a.   Not contest facts agreed to in this agreement.

4            b.   Abide by all agreements regarding sentencing contained

5   in this agreement.

6            c.   At the time of sentencing, provided that defendant

7   demonstrates an acceptance of responsibility for the offense up to

8   and including the time of sentencing, recommend a two-level reduction

9   in the applicable Sentencing Guidelines offense level, pursuant to

10  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

11  additional one-level reduction if available under that section.

12           d.   Recommend that the Court impose a sentence no higher

13  than the low end of the applicable Sentencing Guidelines range.  For

14  purposes of this agreement, the low end of the Sentencing Guidelines

15  range is that defined by the Sentencing Table in U.S.S.G. Chapter 5,

16  Part A.

17

NATURE OF THE OFFENSE

18      4.   Defendant understands that for defendant to be guilty of

19  the crime charged in the sole count of the Information, that is,

20  conspiracy to commit wire fraud, in violation of Title 18, United

21  States Code, Section 1349, the following must be true: (1) there was

22  an agreement between two or more persons to commit wire fraud; and

23  (2) defendant became a member of the conspiracy knowing of at least

24  one of its objects and intending to help accomplish it.  The

25  conspiracy to which defendant is agreeing to plead guilty involves an

26  agreement to commit the substantive offense of wire fraud, in

27  violation of Title 18, United States Code, Section 1343.  The

28  elements of this substantive offense are as follows: (1) defendant

5

knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

<u>PENALTIES AND RESTITUTION</u>

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is

pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is between $1,500,000.01 and $2,229,744.04 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated

collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts attached to this plea agreement as Exhibit B, and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

1

<u>SENTENCING FACTORS</u>

2      11.  Defendant understands that in determining defendant's

3  sentence the Court is required to calculate the applicable Sentencing

4  Guidelines range and to consider that range, possible departures

5  under the Sentencing Guidelines, and the other sentencing factors set

6  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7  Sentencing Guidelines are advisory only, that defendant cannot have

8  any expectation of receiving a sentence within the calculated

9  Sentencing Guidelines range, and that after considering the

10 Sentencing Guidelines and the other § 3553(a) factors, the Court will

11 be free to exercise its discretion to impose any sentence it finds

12 appropriate up to the maximum set by statute for the crime of

13 conviction.

14     12.  Defendant and the USAO agree to the following applicable

15 Sentencing Guidelines factors:

16   Base Offense Level:          25        U.S.S.G. §§ 2X1.1(a);

17                                   2B1.1(a)(1), (b)(1)(I),

18                                       (b)(2)(A)

19   Acceptance of Responsibility:   -3        U.S.S.G. § 3E1.1(a)

20   Total Offense Level:          22

21

22     13.  The USAO will agree to a two-level downward adjustment for

23 acceptance of responsibility (and, if applicable, move for an

24 additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))

25 only if the conditions set forth in paragraph 3(c) are met and if

26 defendant has not committed, and refrains from committing, acts

27 constituting obstruction of justice within the meaning of U.S.S.G. §

28 3C1.1, as discussed below.  Subject to paragraph 25 below, defendant

and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

                    <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16.  Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.    The right to persist in a plea of not guilty.

        b.    The right to a speedy and public trial by jury.

        c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

                                10

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

17.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.   Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

18.   Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction of no more than 51 months, defendant gives up the right to appeal all of the following:

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $2,229,744.04; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 41 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $2,229,744.04.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

1              RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2       21.  Defendant agrees that if the count of conviction is

3  vacated, reversed, or set aside, both the USAO and defendant will be

4  released from all their obligations under this agreement.

5                  EFFECTIVE DATE OF AGREEMENT

6       22.  This agreement is effective upon signature and execution of

7  all required certifications by defendant, defendant's counsel, and an

8  Assistant United States Attorney.

9                    BREACH OF AGREEMENT

10      23.  Defendant agrees that if defendant, at any time after the

11  effective date of this agreement, knowingly violates or fails to

12  perform any of defendant's obligations under this agreement ("a

13  breach"), the USAO may declare this agreement breached.  All of

14  defendant's obligations are material, a single breach of this

15  agreement is sufficient for the USAO to declare a breach, and

16  defendant shall not be deemed to have cured a breach without the

17  express agreement of the USAO in writing.  If the USAO declares this

18  agreement breached, and the Court finds such a breach to have

19  occurred, then: (a) if defendant has previously entered a guilty plea

20  pursuant to this agreement, defendant will not be able to withdraw

21  the guilty plea, and (b) the USAO will be relieved of all its

22  obligations under this agreement.

23      COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

24                    OFFICE NOT PARTIES

25      24.  Defendant understands that the Court and the United States

26  Probation and Pretrial Services Office are not parties to this

27  agreement and need not accept any of the USAO's sentencing

28

                              13

recommendations or the parties' agreements to facts or sentencing factors.

25.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorneys, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

14

1        NO ADDITIONAL AGREEMENTS

2        27.  Defendant understands that, except as set forth herein,

3    there are no promises, understandings, or agreements between the USAO

4    and defendant or defendant's attorneys, and that no additional

5    promise, understanding, or agreement may be entered into unless in a

6    writing signed by all parties or on the record in court.

7        PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

8        28.  The parties agree that this agreement will be considered

9    part of the record of defendant's guilty plea hearing as if the

10   entire agreement had been read into the record of the proceeding.

11   AGREED AND ACCEPTED

12   UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
13   CALIFORNIA

14   TRACY L. WILKISON
     United States Attorney

15

16                                           December 6, 2021

     JAMES C. HUGHES                          Date
17   Assistant United States Attorney

18                                            11/30/21

     BARRY TRACHTENBERG                        Date
19   Defendant

20                                           November 30, 2021

     GARY S. LINCENBERG                        Date
21   ELLIOT C. HARVEY SCHATMEIER
     Attorneys for Defendant Barry
22   Trachtenberg

23

24

25

26

27

28

                              15

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorneys. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorneys, and my attorneys have advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorneys in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     11/20/21
BARRY TRACHTENBERG                    Date
Defendant

<u>CERTIFICATION OF DEFENDANT'S ATTORNEYS</u>

I am BARRY TRACHTENBERG's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     November 30, 2021
GARY S. LINCENBERG                   _____
ELLIOT C. HARVEY SCHATMEIER          Date
Attorneys for Defendant BARRY
TRACHTENBERG

17

1          EXHIBIT B – STATEMENT OF FACT IN SUPPORT OF PLEA AGREEMENT

2          1.     Between in or about December 2016 and in or about December

3     2019, defendant BARRY TRACHTENBERG resided in Woodland Hills,

4     California.  During this time period, defendant exercised ownership

5     and control over Millennium Financial Recovery Services ("MFR"), a

6     limited liability company organized under the laws of California.

7          2.     Between December 2016 and December 2019, co-defendant

8     Jeffrey Goodman ("GOODMAN") was employed as a "Creditor Focus

9     Specialist" by Company 1, a debt settlement organization specializing

10    in the negotiated settlement of debts on behalf of clients.  GOODMAN

11    was employed in the Tempe, Arizona branch office of Company 1.

12         3.     When a new client enrolled with Company 1, the client

13    typically began making monthly deposits into a dedicated bank account

14    under the client's control.  Company 1 then contacted the client's

15    creditors and attempted to negotiate a settlement of the client's

16    outstanding debts.  As part of the onboarding process, the new client

17    provided Company 1 with personal identifying information such as the

18    client's name, address, and social security number, as well as

19    information regarding the debts owed by the client to the client's

20    various creditors.  The abovementioned business practices were

21    employed by Company 1 during the period of December 2016 through

22    December 2019.

23         4.     After a Company 1 employee negotiated a settlement

24    agreement with a third-party creditor, the Company 1 employee

25    typically used an internal software program known as "the Settlement

26    Builder" to enter the terms of the proposed settlement into the

27    information systems of Company 1.  Once the proposed settlement terms

28    were entered into the information systems of Company 1, and

subsequently approved for payment by the client, funds were paid from the client's dedicated bank account to the relevant creditor in accordance with the terms outlined in the settlement agreement.

5. Pursuant to his position as a creditor focus specialist with Company 1, co-defendant GOODMAN was able to access records regarding the names, social security numbers, addresses, and outstanding debts of Company 1's clients. Co-defendant GOODMAN was also able to use the Company 1 Settlement Builder Software to create and submit proposed settlements resolving the debts of Company 1 clients.

<u>OBJECT OF THE CONSPIRACY</u>

6. Beginning no later than in or about December 2016, and continuing through at least in or about December 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant and co-defendant GOODMAN, knowingly combined, conspired, and agreed to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

7. The object of the conspiracy was to be accomplished, in substance, as follows:

a. Defendant would incorporate MFR with the California Secretary of State. The corporation would outwardly appear to be a business engaged in the purchase and collection of third-party debts.

b. Co-defendant GOODMAN would access the information systems of Company 1 to obtain the personal identifying information and financial records of various clients of Company 1, including their names and social security numbers, as well as information

regarding the amounts of their outstanding debts, and the various creditors holding those debts ("client information").

c.   Co-defendant GOODMAN would provide the client information to defendant via interstate wires, including text messages and emails.

d.   After obtaining client information from co-defendant GOODMAN, defendant would contact representatives of Company 1 through the use of interstate wires, including telephone calls and email communications, and falsely represent that MFR was the holder in due course of various debts owed by Company 1's clients ("the client debts").  Defendant would then negotiate settlements of the client debts for a portion of the amount owed, even though MFR was not actually the holder in due course of the client debts and had no ownership interest in the client debts.

e.   As a result of the settlements that defendant caused Company 1 to enter into with MFR, Company 1 would cause money from clients' dedicated bank accounts to be sent to MFR as purported payoffs of the clients' debts.  In fact, as defendant and co-defendant GOODMAN then knew, MFR had not purchased the clients' debts.

f.   After MFR received the payments on the settlements fraudulently negotiated with Company 1 using information provided by co-defendant GOODMAN, defendant would provide co-defendant GOODMAN with a portion of the payment either via cash payment or the purchase of precious metals in co-defendant GOODMAN's name and keep the remainder for himself.

8.   In total, between in or about December 2016 and in or about December 2019, defendant and co-defendant GOODMAN submitted, and

caused to be submitted, approximately 675 fraudulent settlement offers to Company 1, relating to debts held by approximately 673 different Company 1 clients.  As a result of these fraudulent settlement offers submitted in furtherance of the conspiracy, Company 1 ultimately transferred approximately $2,229,744 in payments from accounts owned and controlled by Company 1 clients to MFR.

OVERT ACTS

9.   In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendant and co-defendant GOODMAN committed and willfully caused others to commit the following overt acts, among others, in Los Angeles County, within the Central District of California, and elsewhere:

Overt Act No. 1:   On or about December 16, 2016, defendant caused articles of organization to be filed with the California Secretary of State incorporating MFR in the state of California.

Overt Act No. 2:   On or about January 4, 2017, defendant, using the email address trachten@millenniumfinancialrecovery.net, sent an email to a Company 1 representative regarding Company 1 client D.G. -- whose personal identifying information and financial and debt information co-defendant GOODMAN had provided to defendant -- in which defendant falsely represented that defendant was authorized to enter into a settlement agreement to resolve D.G.'s outstanding debt to Web Bank in the amount of $3,049.60.  Attached to the email was a two-page letter, written on MFR letterhead, stating that MFR was willing to accept $1,463.80 to resolve the debt owed by D.G. to Web Bank.

1        <u>Overt Act No. 3:</u>   On or about January 10, 2017, defendant

2    opened a business checking account with US Bank in the name of MFR

3    (the "MFR Account").

4        <u>Overt Act No. 4:</u>   On or about January 24, 2017, defendant

5    deposited a check in the amount of $1,463.80 into the MFR account.

6    The check was issued from the dedicated bank account held in the name

7    of Company 1 client D.G. pursuant to the settlement negotiated by

8    defendant with Company 1.

9        <u>Overt Act No. 5:</u>   On or about May 16, 2017, defendant, using

10   the email address trachten@millenniumfinancialrecovery.net, sent an

11   email to a Company 1 representative regarding Company 1 client A.F. -

12   - whose personal identifying information and financial and debt

13   information co-defendant GOODMAN had provided to defendant -- in

14   which defendant falsely represented that defendant was authorized to

15   enter into a settlement agreement to resolve A.F.'s outstanding debt

16   to Citibank in the amount of $22,233.11.  Attached to the email was a

17   one-page letter, written on MFR letterhead, stating that MFR was

18   willing to accept $10,672 (nine payments of $1,067 and one payment of

19   $1,069) to resolve the debt owed by A.F. to Citibank.

20       <u>Overt Act No. 6:</u>   On or about May 27, 2017, defendant

21   deposited into the MFR account a check in the amount of $1,069.  The

22   check was issued from the dedicated bank account held in the name of

23   Company 1 client A.F. pursuant to the settlement negotiated by

24   defendant with Company 1.

25       <u>Overt Act No. 7:</u>   On or about December 15, 2017, defendant,

26   using the email address trachten@millenniumfinancialrecovery.net,

27   sent an email to a Company 1 representative regarding Company 1

28   client R.M. -- whose personal identifying information and financial

and debt information co-defendant GOODMAN had provided to defendant -
- in which defendant falsely represented that defendant was
authorized to enter into a settlement agreement to resolve R.M.'s
outstanding debt to Citibank in the amount of $4,897.39.  Attached to
the email was a two-page letter, written on MFR letterhead, stating
that MFR was willing to accept $2,351 (five payments of $390 and one
payment of $401) to resolve the debt owed by R.M. to Citibank.

Overt Act No. 8:   On or about January 2, 2018, defendant
deposited a check in the amount of $390 into the MFR account.  The
check was issued from the dedicated bank account held in the name of
Company 1 client R.M. as part of the settlement negotiated by
defendant with Company 1.

Overt Act No. 9:   On or about August 20, 2018, defendant,
using the email address trachten@millenniumfinancialrecovery.net,
sent an email to a Company 1 representative regarding Company 1
client, P.O. -- whose personal identifying information and financial
and debt information co-defendant GOODMAN had provided to defendant -
- in which defendant falsely represented that defendant was
authorized to enter into a settlement agreement to resolve P.O.'s
outstanding debt to Synchrony Bank in the amount of $3,783.41.
Attached to the email was a four-page letter, written on MFR
letterhead, stating that MFR was willing to accept $1,816 (three
payments of $500 and one payment of $316) to resolve the debt owed by
P.O. to Synchrony Bank.

Overt Act No. 10:   On or about August 30, 2018, defendant
deposited a check in the amount of $500 into the MFR account.  The
check was issued from the dedicated bank account held in the name of

1   Company 1 client P.O. as part of the settlement negotiated by

2   defendant with Company 1.

3       Overt Act No. 11:   On or about June 5, 2019, defendant, using

4   the email address trachten@millenniumfinancialrecovery.net, emailed

5   co-defendant GOODMAN a five-page letter, written on MFR letterhead,

6   regarding Company 1 client G.K. -- whose personal identifying

7   information and financial and debt information co-defendant GOODMAN

8   had provided to defendant -- falsely claiming that G.K. could resolve

9   an outstanding debt owed to Chase Bank N.A. in the amount of

10  $14,893.13 by paying $7,149 (five payments of $500 and one payment of

11  $4,649) to MFR.

12      Overt Act No. 12:   On or about June 5, 2019, co-defendant

13  GOODMAN, acting in his capacity as an employee of Company 1, accessed

14  the Settlement Builder software program and entered the payment terms

15  proposed by defendant for the resolution of the debt owed by Company

16  1 client G.K. to Chase Bank N.A.

17      Overt Act No. 13:   On or about June 21, 2019, defendant

18  deposited a check in the amount of $500 into the MFR account.  The

19  check was issued from the dedicated bank account held in the name of

20  Company 1 client G.K. as part of the settlement orchestrated by

21  defendant and co-defendant GOODMAN.

22      Overt Act No. 14:   On or about August 16, 2019, defendant,

23  using the email address trachten@millenniumfinancialrecovery.net,

24  emailed co-defendant GOODMAN a six page letter, written on MFR

25  letterhead, regarding Company 1 client R.Z. -- whose personal

26  identifying information and financial and debt information co-

27  defendant GOODMAN had provided to defendant -- falsely claiming that

28  R.Z. could resolve an outstanding debt owed to Chase Bank N.A. in the

1    amount of $24,641.89 by paying $11,828 (two payments of $3,000 and
2    one payment of $5,828) to MFR.

3       Overt Act No. 15:   On or about August 16, 2019, co-defendant
4    GOODMAN, acting in his capacity as an employee of Company 1, accessed
5    the Settlement Builder software program and created a proposed
6    settlement for the resolution of the debt owed by Company 1 client
7    R.Z. to Chase Bank N.A, by entering the payment terms proposed by
8    defendant.

9       Overt Act No. 16:   On or about August 30, 2019, defendant
10   deposited a check in the amount of $5,828 into the MFR account.  The
11   check was issued from the dedicated bank account held in the name of
12   Company 1 client R.Z. as part of the settlement orchestrated by
13   defendant and co-defendant GOODMAN.

14      Overt Act No. 17:   On or about December 2, 2019, co-defendant
15   GOODMAN accessed the information systems of Company 1 and retrieved
16   information regarding Company 1 client J.M., including her name,
17   social security number, the names of her creditors, the amount of her
18   outstanding debts, and the account numbers associated with these
19   debts, and sent this information to defendant via text message.

20      Overt Act No. 18:   On or about December 6, 2019, defendant,
21   using the email address trachten@millenniumfinancialrecovery.net,
22   emailed co-defendant GOODMAN a four-page letter, written on MFR
23   letterhead, claiming that Company 1 client J.M. could resolve an
24   outstanding debt owed to Bank of America N.A. in the amount of
25   $14,434.81 by making a single payment of $6,929 to MFR.

26      Overt Act No. 19:   On or about December 6, 2019, co-defendant
27   GOODMAN, acting in his capacity as an employee of Company 1, accessed
28   the Settlement Builder software program and created a proposed

settlement for the resolution of the debt owed by Company 1 client J.M. to Bank of America N.A, by entering the payment terms proposed by defendant.